DANIEL A. SCHLANGER
(*pro hac vice* application forthcoming)
SCHLANGER LAW GROUP, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
Tel: 212-500-6114
dschlanger@consumerprotection.net

ELLIOT CONN (SBN 279920)
COLIN HECTOR (SBN 281795)
CONN LAW, PC
100 Bush Street, Suite 1580
San Francisco, CA 94104
Tel: 415-417-2780
elliot@connlawpc.com
colin@connlawpc.com

Attorneys for Plaintiff Alpa Patel

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ALPA PATEL,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PAYPAL, INC.<br><br>　　　　　Defendant. | Case No.  5:26-cv-1695<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>1. **ELECTRONIC FUND TRANSFER ACT, 15 U.S.C. § 1693, *ET SEQ*.; AND**<br><br>2. **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200, *ET SEQ*.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Alpa Patel ("Ms. Patel" or "Plaintiff"), by and through her undersigned attorneys, brings this Complaint against Defendant PayPal, Inc. ("PayPal" or "Defendant") and hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory, and treble damages, and attorney's fees and costs brought pursuant to the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq*. and pursuant to the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

2. Plaintiff was the victim of a crime when unknown third parties unlawfully gained access to Plaintiff's PayPal account ("Account") without her knowledge, consent or authorization by linking a fraudulent email address, phone number and unknown bank account to her PayPal Account.

3. In May 2025, using the fraudulent email address of allpa.patell@gmail.com and a fraudulent phone number, third parties were able to initiate the sale of Plaintiff's Bitcoin ("BTC"), yielding nearly $100,000.00.

4. Once the sale proceeds were deposited into Plaintiff's PayPal Account, the third parties made an electronic fund transfer to a bank account at Alliant Credit Union, an account that was linked to Plaintiff's PayPal Account without her knowledge or consent.

5. Plaintiff disputed the May 2025 transactions, informing Defendant that allpa.patell@gmail.com and the linked phone number were not hers. Plaintiff also informed the Defendant that she had no banking relationship with Alliant Credit Union.

6. Eventually, Defendant reimbursed Plaintiff for most of her loss resulting from the May 2025 unauthorized transactions.

7. Remarkably, the unknown third parties were permitted by Defendant to re-link the same fraudulent email address of allpa.patell@gmail.com, add a fraudulent phone number and an Alliant Credit Union account to Plaintiff's PayPal Account once again.

8. Having been permitted by Defendant to regain control over Plaintiff's PayPal Account using known fraudulent credentials, on or about August 10, 2025, the unknown third parties were able to steal $113,672.89 from Plaintiff by once again selling her BTC and immediately thereafter transferring the proceeds of the BTC sale to an account at Alliant Credit Union.

9. Plaintiff did not authorize the sale of the BTC or the transfer of the funds out of her PayPal Account.

10. Plaintiff timely and repeatedly disputed the unauthorized electronic fund transfers with Defendant; however, Defendant has unlawfully denied Plaintiff's disputes and has not reimbursed Plaintiff for the stolen funds or reimbursed her for the unauthorized assessment of fees.

11. Plaintiff brings this lawsuit against Defendant for violations of the EFTA and the UCL.

**PARTIES**

12. Plaintiff Alpa Patel is a natural person and citizen of New York residing in New York County, NY.

13. Plaintiff is a "consumer" as defined by the EFTA.

14. At all times relevant, Plaintiff's Account with Defendant was used for personal, family, or household purposes.

15. Defendant is a corporation organized under the laws of the State of Delaware with its corporate headquarters and principal place of business at 2211 N 1st Street in San Jose, California.

16. Defendant is a financial technology company that operates an online payments system and provides digital wallet services.

17. Defendant is a provider of electronic fund transfer services and is a "financial institution" within the meaning of the EFTA. 15 U.S.C. § 1693a(9).

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g) as the claims alleged herein arise under the EFTA, 15 U.S.C. § 1693, *et seq*.

19. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to resolve Plaintiff's claims arising under California law for statutory violations.

20. This Court has personal jurisdiction over Defendant because Defendant's corporate headquarters are located in this District, and Defendant directed and committed certain of the unlawful acts alleged herein in this District.

//

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant's corporate headquarters and principal place of business are located in this District and because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

**DIVISIONAL ASSIGNMENT**

22. Assignment to the San Jose Division is proper under L.R. 3-2(c) and (e), since a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County.

**FACTUAL ALLEGATIONS**

23. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

24. At all relevant times, Plaintiff maintained a PayPal Account with Defendant.

25. Since the beginning of 2025, there were at least two separate account takeovers of the Account that resulted in unauthorized transactions.

**The First Account Takeover**

26. On or about February 5, 2025, Plaintiff's PayPal Account was compromised by an account takeover whereby unknown third parties added the email address allpa.patell@gmail.com and an additional phone number ending x5888 to Plaintiff's PayPal Account.

27. Allpa.patell@gmail.com is not an email address ever used or owned by Plaintiff, and the phone number that was added to the Account was completely unknown to Plaintiff.

28. On the same day the email address and new phone number were linked to Plaintiff's PayPal Account, the new phone number was made the primary phone number on the Account and two-factor authentication was activated.

29. As a result of being set as the primary number on Plaintiff's PayPal Account, the new phone number would receive any Short Message Service ("SMS") notifications—not Plaintiff.

30. On February 5, 2025, Plaintiff received a suspicious email, purporting to be from Paypal, regarding a changed password, and promptly notified Paypal via PayPal Assistant.

31. Per instructions she received via PayPal Assistant, Plaintiff forwarded a copy of the

suspicious email to PayPal.

32. On February 10, 2025, Plaintiff's PayPal Account was breached by unknown third parties, and over $91,000 of Bitcoin and Etherium in Plaintiff's PayPal Account were sold by the perpetrators.

33. Plaintiff informed PayPal of the breach on February 12, 2025, which was the same day she became aware of it.

34. Paypal determined that the transactions in question were unauthorized, and reversed the sale on February 12, 2025.

35. That same day (February 12, 2025), Plaintiff again changed her password, and removed the phone number ending x5558 that had been added to the account by the criminals.

**The Second Account Takeover**

36. On or about March 2, 2025, the unknown third parties linked an Alliant Credit Union account to Plaintiff's PayPal Account.

37. Plaintiff was not the owner or holder of any Alliant Credit Union bank account and did not authorize any Alliant Credit Union bank account to be linked to her PayPal Account.

38. Plaintiff did not receive any alerts, SMS notifications or emails from PayPal regarding any of the changes to Plaintiff's PayPal Account and was completely unaware that they had been made.

39. On May 5, 2025, the third-party fraudsters initiated a BTC sale transaction via PayPal's Cryptocurrency Hub in the amount of $99,778.45. Additionally, Plaintiff was assessed a $1,496.68 fee for the unauthorized transaction.

40. In connection with this theft, the criminals added back the same phone number ending x5558 and the same fraudulent email (allpa.patell@gmail.com) that had been added in connection with the February 10, 2025 transfers that PayPal had acknowledged were unauthorized, and that Plaintiff had previously removed when re-securing her account following the February theft.

41. Plaintiff did not receive any alerts, SMS notifications or emails from PayPal regarding the sale of the BTC or the assessment of any transaction fees.

42. After Plaintiff's BTC was liquidated, all $98,281.77 of the proceeds from the sale

(after deduction of the transaction fee) were transferred out of her PayPal Account to an account at Alliant Credit Union.

43. Plaintiff did not authorize or benefit from the sale of her BTC.

44. Plaintiff did not receive any notice, alerts, SMS notifications or emails from PayPal regarding the sale of the BTC.

45. Plaintiff did not authorize or benefit from the electronic transfers of $98,281.77 from her PayPal Account to Alliant Credit Union.

46. Plaintiff did not receive any notice, alerts, SMS notifications or emails from PayPal regarding the electronic fund transfer of $98,281.77 from her PayPal Account to Alliant Credit Union.

47. On or about May 9, 2025, Plaintiff discovered the unauthorized sale of BTC and unauthorized electronic fund transfers and reported the incident to Defendant.

48. Plaintiff informed Defendant that allpa.patell@gmail.com was not and never has been her email address and that the new phone number was not and never has been her number.

49. Plaintiff informed Defendant that she did not add allpa.patell@gmail.com or the new phone number to her Account nor did she authorize either of them to be added to her PayPal Account.

50. Plaintiff informed Defendant that she did not have any banking relationship with Alliant Credit Union and never linked the Alliant Credit Union account to her PayPal Account.

51. Upon information and belief, PayPal and/or Plaintiff removed allpa.patell@gmail.com, the unknown new phone number from Plaintiff's PayPal Account and unlinked the Alliant Credit Union bank account from her PayPal Account.

52. Additionally, at that time, additional security measures were added to Plaintiff's PayPal Account, including a new password, two-step verification, change of mobile PIN and fingerprint recognition.

53. On May 11, 2025, Defendant denied Plaintiff's dispute regarding the unauthorized sale of the BTC, the unauthorized assessment of the $1,496.68 transaction fee and the electronic fund transfer of $98,281.77 from her PayPal Account to the Alliant Credit Union account stating that

the transactions were "not unauthorized."

54. On May 22, 2025, Defendant reversed its decision and returned $98,281.77 to Plaintiff's PayPal Account.

55. Defendant did not return the $1,496.68 transaction fee from the unauthorized transactions.

56. Plaintiff thereafter repurchased BTC with the restored funds and was assessed $1,457.40 in fees to do so. Defendant did not reimburse Plaintiff for the fees.

**The Third Account Takeover**

57. Upon information and belief, sometime in June 2025, Plaintiff's Account was again compromised by an account takeover whereby unknown third parties re-added the same fraudulent allpa.patell@gmail.com email address and fraudulent phone number to Plaintiff's PayPal Account.

58. Additionally, the unknown third parties linked an Alliant Credit Union bank account to Plaintiff's PayPal Account.

59. Plaintiff was not the owner or holder of any Alliant Credit Union bank account and did not authorize any Alliant Credit Union bank account to be linked to her PayPal Account.

60. Plaintiff was unaware that any changes had been made to her PayPal Account as Plaintiff did not receive any alerts, SMS notifications or emails from PayPal regarding the changes.

61. On or about August 10, 2025, the third-party fraudsters initiated a BTC sale transaction via PayPal's Cryptocurrency Hub in the amount of $113,672.89. Additionally, Plaintiff was assessed a $1,705.09 fee for the unauthorized transaction.

62. Plaintiff did not receive any alerts, SMS notifications or emails from PayPal regarding the August 10, 2025, sale of the BTC or the assessment of any transaction fees.

63. Plaintiff did not authorize or benefit from the August 10, 2025 sale of her BTC.

64. On or about August 10, 2025, $111,967.80 ($113,672.89 proceeds from the sale of the BTC less the transaction fee of $1,705.09) was transferred out of her PayPal Account to Alliant Credit Union via two unauthorized electronic fund transfers: 1) $59,000.00; and 2) $52,967.80.

65. Plaintiff did not receive any alerts, SMS notifications or emails from PayPal regarding electronic fund transfers.

66. Plaintiff did not authorize or benefit from the August 10, 2025, electronic fund transfers from her PayPal Account to Alliant Credit Union.

67. On August 15, 2025, Plaintiff discovered the unauthorized sale of her BTC and the unauthorized electronic fund transfers and reported the incident to Defendant.

68. Plaintiff once again informed Defendant that she did not add allpa.patell@gmail.com to her Account, that allpa.patell@gmail.com was not her email address, that the new phone number was not hers and that she did not add the new phone number to her Account.

69. Plaintiff again informed Defendant that she did not have any banking relationship with Alliant Credit Union

70. On August 17, 2025, Defendant denied Plaintiff's dispute regarding the unauthorized transactions stating: "Based on our review, we found this transaction is consistent with your PayPal payment history."

71. That same date, Plaintiff appealed Defendant's decision.

72. On August 18, 2025, at 9:27 a.m., Defendant acknowledged receipt of Plaintiff's appeal of Defendant's decision.

73. A mere two hours later, at 11:21 a.m., Defendant denied Plaintiff's appeal stating again "Based on our review, we found this transaction is consistent with your PayPal payment history."

74. After receiving the denial of her appeal, on August 18, 2025, Plaintiff demanded documentation relied upon by Defendant in reaching its determination that the transactions were consistent with her PayPal history.

75. On August 19, 2025, Defendant again denied Plaintiff's claim and request for documentation citing SMS verification and IP consistency as the basis for the determination that the transactions were authorized.

76. On or about August 20, 2025, Plaintiff made the following complaints to law enforcement and regulatory agencies:

- New York Police Department, 13th Precinct – Report #2025013006733;
- Better Business Bureau, Complaint No. 23775799;

- Consumer Financial Protection Bureau, Complaint No. 250820-23360150;
- FBI's Internet Crime Complaint Center (IC3) Complaint;
- NY Attorney General Complaint (Consumer Frauds & Protection Bureau); and
- New York Department of Financial Services, Complaint No. BKC-2025-01665196.

77. By letter dated August 31, 2025, Defendant PayPal once again denied Plaintiff's dispute stating that the transactions were authorized.

78. Despite Plaintiff's prompt reports and repeated follow-up, Defendant has failed and refused to refund the stolen funds, refund the transaction fees or provide adequate documentation of its investigation.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**By Plaintiff Against Defendant**
**Violations of the Electronic Fund Transfer Act**
**(15 U.S.C. § 1693, *et seq.*)**

79. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

80. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

81. Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event . . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

82. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

83. This cap is increased to $500 where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. § 1693g(a)(2).

84. The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>
> (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
>
> > (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
> >
> > (ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

85. Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

86. Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under 15 U.S.C. § 1693a(12). *See, e.g.*, Official

Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

87. Thus, Defendant's failure to reimburse Plaintiff is patently unlawful and in violation of 15 U.S.C. § 1693g.

88. Defendant's stated basis for denial is also invalid under the EFTA.

89. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

90. Defendant cannot meet its burden of proof here, where Plaintiff:

   a) Promptly disputed the transactions;
   b) Provided details regarding the unauthorized access to her Account;
   c) Provided multiple reports to law enforcement and regulatory agencies;
   d) Has no criminal history;
   e) Has no history of filing false disputes;
   f) The thefts are totally inconsistent with Plaintiff's pattern of use; and notably,
   g) PayPal was on notice as early as May 2025 that the email address of allpa.patell@gmail.com was fraudulent, that the phone number ending x5888 added to the Account was fraudulent, and that Plaintiff had no prior banking relationship with Alliant Credit Union.

91. Defendant also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d). *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

92. Defendant also violated the EFTA by failing to provide Plaintiff with notice of her right to request reproductions of all documents which Defendant relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

93. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual

1  damages, including but not limited to past and future monetary loss, past and future mental distress,
2  emotional anguish, and other damages that will be presented to the trier of fact.

3  94. Defendant did not conduct a good faith investigation regarding the stolen funds.

4  95. Defendant did not have a reasonable basis for believing the Account was not in error
5  based on the evidence Plaintiff provided to Defendant.

6  96. Specifically, Defendant's conduct as set forth herein constitutes a failure to
7  investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's
8  Account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's
9  Account was not in error when such conclusion could not reasonably have been drawn from the
10 available evidence, and for this reason constitutes a violation of 15 U.S.C. § 1693f(e), entitling
11 Plaintiff to treble damages in addition to all other relief sought herein.

12 97. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is
13 entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and
14 reasonable attorneys' fees.

15 Wherefore, Plaintiff prays for relief as set forth below.

**SECOND CAUSE OF ACTION**
**By Plaintiff Against Defendant**
**Violations of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

19 99. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as
20 if fully set forth herein.

21 100. California Business and Professions Code § 17200, *et seq*., often referred to as the
22 "Unfair Competition Law" or "the UCL," defines unfair competition to include any unlawful, unfair,
23 or fraudulent business act or practice. The UCL provides that a court may order injunctive relief and
24 restitution as remedies for any violations of the UCL.

25 101. Beginning on an exact date unknown to Plaintiff, but at all times relevant herein and
26 during the four years preceding the filing of the Complaint in this action, Defendant committed and
27 it continues to commit acts of unfair competition proscribed by the UCL, including the practices

alleged herein.

102.　The business acts and practices alleged herein constitute unfair business practices in that said acts and practices offend public policy and are substantially injurious to the public.

103.　The business acts and practices alleged hereinabove violate the public policies expressed in the EFTA, 15 U.S.C. § 1693, *et seq*.

104.　The business acts and practices alleged herein above constitute unlawful business practices in that Defendant has violated the EFTA, 15 U.S.C. § 1693, *et seq*.

105.　The business acts and practices alleged herein constitute fraudulent business practices in that said acts and practices are likely to deceive consumers as to their legal rights and obligations, and by use of such deception, may preclude such individuals from exercising legal rights to which they are entitled.

106.　The unlawful, unfair and fraudulent business acts and practices of Defendant described herein present a continuing threat in that Defendant is currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

107.　Plaintiff has lost money or property, including (a) amounts improperly paid to and/or retained by Defendant and/or its agents; (b) costs associated with efforts to respond to or challenge Defendant's policies. Plaintiff has lost money as a result of Defendant's conduct and has been deprived of at least $116,626.97 that Defendant wrongfully refused to refund.

108.　The unfair, unlawful, and fraudulent acts and practices alleged herein were conceived, reviewed, approved and otherwise controlled from Defendant's headquarters in California, including the unlawful refusal to refund Plaintiff for the unauthorized transactions pursuant to the EFTA and upon information and belief, the processing of the unauthorized transactions.

109.　Plaintiff, individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendant's unlawful business acts and practices, is entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary.

110.　Pursuant to Cal. Business and Professions Code § 17203, Plaintiff seeks an order enjoining Defendant from engaging in such acts and practices as hereinabove alleged.

111. In addition, pursuant to Cal. Code of Civil Procedure § 1021.5, Plaintiff seeks recovery of attorneys' fees, costs and expenses incurred in the filing and prosecution of this action.

Wherefore, Plaintiff prays for relief as set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff seeks judgment against Defendant as follows:

A. awarding Plaintiff actual damages, treble damages, statutory damages, costs, and reasonable attorneys' fees;

B. for an Order declaring Defendant's conduct unlawful;

C. For preliminary, permanent and mandatory injunctive relief prohibiting Defendant, its officers, agents and all those acting in concert with it, from committing in the future those violations of law herein alleged;

D. for pre- and post-judgment interest according to proof;

E. such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury.

RESPECTFULLY SUBMITTED

Date: February 26, 2026

*/s/ Elliot Conn*
ELLIOT CONN (SBN 279920)
COLIN HECTOR (SBN 281795)
CONN LAW, PC
100 Bush Street, Suite 1580
San Francisco, CA 94104
Tel: 415-417-2780
elliot@connlawpc.com
colin@connlawpc.com

DANIEL A. SCHLANGER
(*pro hac vice* application forthcoming)
SCHLANGER LAW GROUP, LLP
150 Allens Creek Road, Suite 240

Rochester, NY 14618
Tel: 212-500-6114
dschlanger@consumerprotection.net

Attorneys for Plaintiff
ALPA PATEL